IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN W. | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-6557 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kevin W. ("Claimant") moves to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIBs"). The Commissioner filed a response seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons described herein, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #18), is granted and the Commissioner's motion to uphold the decision, (Dckt. #23), is denied.

**I.    BACKGROUND**

**A.    Procedural History**

On May 1, 2018, Claimant (then forty years old) filed an application for DIBs, alleging disability dating back to February 1, 2018, due to limitations stemming from lumbar spondylosis, multilevel degenerative disc disease, spinal stenosis of the lumbar and cervical spine, and

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by his first name and the first initial of his last name. Acting Commissioner of Social Security Kilolo Kijakazi has been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

cervical spondylosis. (Administrative Record ("R.") 239).[2] His claim was denied initially and upon reconsideration. (R. 13). Claimant filed a timely request for a hearing, which was held on November 6, 2019, before Administrative Law Judge ("ALJ") Kevin Vodak. (R. 30-64). On December 24, 2019, the ALJ issued a written decision denying Claimant's application for benefits. (R. 13-24). The Appeals Council denied review on September 2, 2020, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

### B. The Social Security Administration Standard to Recover Benefits

To qualify for disability benefits, a claimant must demonstrate that he is disabled, meaning he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable

---

[2] Claimant filed an earlier application for DIBs on October 1, 2015. A hearing was held on September 8, 2017, before ALJ Lana Johnson, (R. 65-89), who issued a decision denying Claimant's application on January 21, 2018, (R. 124-142). Rather than appealing this decision, it appears that Claimant filed a new application alleging a later onset date, the denial of which is the subject of this appeal.

2

medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments, the SSA then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered disabled, and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), or his capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given his RFC, age, education, and work experience. If such jobs exist, the claimant is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

### C. The Evidence Presented to the ALJ

Claimant alleges that he has difficulty concentrating due to chronic back pain and the medications used to treat it. (R. 248, 253, 666, 669, 683). Because the Court's decision centers on this mental limitation, its discussion of the evidence is limited accordingly.

#### 1. Evidence from Claimant's Medical Record

Claimant received a lumbar discectomy in 2015, (R. 792-93), but continued to complain

of chronic back pain throughout 2016 and 2017. (R. 386, 389, 666, 669, 676, 681). His pain medications caused grogginess. (R. 666, 683). In 2018, Claimant was diagnosed with spondylosis, degenerative disc disease, spinal stenosis, and biceps tendonitis. (R. 314, 353-54, 486). He underwent cervical spine surgery in August 2018, (R. 435-37), right shoulder surgery in December 2018, (R. 530, 535), and a spinal cord stimulator placement surgery in March 2019, (R. 800-01). Still, he continued to complain of back and shoulder pain, as well as medication side effects. (R. 579, 584, 587). An October 2019 MRI showed osteoarthritis of the thoracic spine, as well as multilevel degenerative changes in the lumbar spine. (R. 808-11).

### 2. Opinions from State Agency Consultants

State agency psychological consultant Russell Taylor, Ph.D., reviewed Claimant's file on July 4, 2018. He found that Claimant had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself. (R. 95). More specifically, Dr. Taylor found that Claimant was moderately limited in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 100-01). Dr. Taylor concluded that:

> [Claimant] retain[ed] the mental capacity to understand, remember, and concentrate sufficiently in order to carry out one- or two-step instructions for a normal work period. He could make work-related decisions. He could interact with others sufficiently in a work setting. He could adapt to routine changes and pressures in the work environment.

(R. 101-02). State agency psychological consultant Thomas Low, Ph.D., reviewed Claimant's file on October 18, 2018, and concurred with Dr. Taylor's findings. (R. 113-20).

4

### 3. Hearing Testimony

At his November 6, 2019 hearing, Claimant testified that his typical pain level was a seven or eight out of ten, (R. 38), and his pain medications caused grogginess and memory problems, (R. 48-49). Vocational Expert ("VE") Kenneth Jones also testified. The ALJ asked him to consider a hypothetical person of Claimant's age, education, and experience who was limited to light work with various physical restrictions and "due to moderate limitations in concentration, persistence, or pace, [could] only understand, remember, and carry out simple, routine tasks." (R. 58). The VE stated that this person could not perform Claimant's past work but could perform other work such as marker, information clerk, and cashier. (R. 58-59).

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date of February 1, 2018. (R. 15). At step two, the ALJ determined that Claimant suffered from the severe impairments of degenerative disc disease of the spine, right rotator cuff and biceps tendinitis, obesity, adjustment disorder, anxiety, and depression. (*Id.*). At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including listing 12.04 for depression or listing 12.06 for anxiety. (R. 16). In making this finding, the ALJ determined that Claimant's mental impairments caused a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself. (R. 16-17).

Before turning to step four, the ALJ found that, through his date last insured, Claimant had the RFC to perform light work with various physical restrictions and that "due to moderate limitations in concentration, persistence, or pace, [Claimant was] limited to understanding, remembering, and carrying out simple, routine tasks." (R. 18). Based on these findings, the ALJ determined at step four that Claimant was not capable of performing past relevant work as a maintenance worker. (R. 23). Even so, at step five, the ALJ concluded that a sufficient number of jobs existed in the national economy that Claimant could perform given his RFC, including the representative positions of marker, information clerk, and cashier. (R. 23-24). As such, the ALJ found that Claimant was not under a disability at any time from February 1, 2018, through the date of the decision. (R. 24).

## II.  STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent

symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

### III. ANALYSIS

Claimant argues that the ALJ's RFC assessment failed to adequately address his moderate limitation in concentration, persistence, or maintaining pace ("CPP"). (Dckt. #18 at 8). Because this argument has merit, the Court finds that a remand to the SSA is warranted and will not address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations . . . we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments, which he is free to assert on remand.

An ALJ's RFC findings are intended to capture "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §416.945(a)(1); *see also Moon v. Colvin*, 763 F.3d 718, 720 (7th Cir. 2014). As noted above, the ALJ in this case found that Claimant had a moderate limitation in CPP, which the ALJ accommodated by restricting Claimant to "understanding, remembering, and carrying out simple, routine tasks." (R. 18). The Court finds that the ALJ's assessment of Claimant's mental limitations requires remand for two reasons. First, the ALJ failed to properly

7

support his decision to discount the state agency consultants' recommendation that Claimant should be limited to jobs requiring only one- to two-step instructions. Second, the ALJ failed to explain how restricting Claimant to simple, routine tasks would adequately capture his limitations in CPP.

> A. **The ALJ failed to properly support his decision to discount the opinions of the state agency psychological consultants.**

Both state agency psychological consultants found that Claimant should be restricted to one- or two-step tasks in order to account for his moderate limitations in CPP. The ALJ found their opinions to be "mostly consistent with the overall objective evidence," but discounted the recommended one- or two-step restriction as "somewhat vague." (R. 21). This was the only reason proffered by the ALJ for discounting the consultants' opinions and, as explained below, it was insufficient. *See Tincher v. Berryhill*, No. 16 C 7305, 2018 WL 472447, at *6 (N.D.Ill. Jan. 18, 2018) (ALJ's assertion that state agency consultants' one- to two-step tasks limitation was "vague" was an insufficient reason to discount it) (citing cases).

Contrary to the ALJ's assertion, a one- to two-step restriction is not vague. Indeed, it functions as a term of art in the Social Security context. *Schlattman v. Colvin*, No. 12 C 10422, 2014 WL 185009, at *7 (N.D.Ill. Jan. 14, 2014); *Tincher*, 2018 WL 472447, at *6. And because the Department of Labor's Dictionary of Occupational Titles ("DOT") defines a Reasoning Development Level of 1 as the ability to "[a]pply commonsense understanding to carry out simple *one- or two-step instructions*," 1991 WL 688702 (emphasis added), courts in this district have repeatedly interpreted the restriction to limit a claimant to Level 1 Reasoning jobs. *See, e.g., Brad H. v. Kijakazi*, No. 19-cv-7890, 2022 WL 4448818, at *3 (N.D.Ill. Sept. 23, 2022); *Deborah B. v. Kijakazi*, No. 20-cv-7729, 2022 WL 1292249, at *2 (N.D.Ill. Apr. 29, 2022); *Wyatt v. Colvin*, 14-cv-3252, 2015 WL 3919058, at *8 (N.D.Ill. June 24, 2015); *Schlattman*,

8

2014 WL 185009, at *7; *Wiszowaty v. Astrue*, 861 F.Supp.2d 924, 947 (N.D.Ind. 2012). Comparatively, a restriction to "simple work" could include jobs with a Reasoning Level of 2 or higher. *See, e.g., Deborah B.*, 2022 WL 1292249, at *2.

The Commissioner appears to dispute this precedent, arguing that DOT reasoning levels "bear no correlation to SSA's criteria for determining mental [RFC]." (Dckt. #23 at 6). However, none of the cases cited by the Commissioner in support of this position address the connection between DOT reasoning levels and a *one- to two-step* restriction. Instead, they stand for the proposition that jobs requiring a Reasoning Level of 2 or higher may be consistent with restrictions to *simple* or *unskilled* work. *See Sawyer v. Colvin*, 512 Fed.Appx. 603, 611 (7th Cir. 2013) ("[E]ven workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring level 3 reasoning development."); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding job requiring level three reasoning was not inconsistent with claimant's ability to perform only simple work); *Anderson v. Colvin*, 514 Fed.Appx. 756, 764 (10th Cir. 2013) (finding there was not necessarily a conflict between unskilled work and Reasoning Level 3 jobs); *Monateri v. Comm'r of Soc. Sec.*, 436 Fed.Appx. 434, 446 (6th Cir. 2011) (finding no authority to support finding that "jobs requiring reasoning levels two or three are inconsistent . . . with a limitation to simple work"); *Thompkins v. Astrue*, No. 09 C 1339, 2010 WL 5071193, at *10 (N.D.Ill. Dec. 6, 2010) (finding "no one-to-one parallel can be found between 'simple' as it used under the regulations and the DOT's requirements"). Accordingly, these cases are not dispositive here.

The Commissioner cites other cases in support of the assertion that "the ALJ's limitation to understanding, remembering, and carrying out simple, routine tasks was not a limitation to [Reasoning Level 1 jobs]," (Dckt. #23 at 7), but Claimant never argues that it was. Instead,

9

Claimant asserts that the ALJ's unsupported decision to omit the consultants' one- to two-step limitation was not harmless. (Dckt. #18 at 10). Because each of the jobs cited by the ALJ has a Reasoning Level of 2 or higher, (R. 58-59), the Court agrees. *See, e.g., Tincher*, 2018 WL 472447, at *7 ("[T]he ALJ's rejection of Dr. Voss' assessed limitation was not harmless because all three jobs that she found Claimant could perform . . . require level-two reasoning.").

Accordingly, this case must be remanded so that the ALJ can either adopt the consultants' one- to two-step limitation, or better explain his decision not to do so. *See, e.g., Mildred B. v. Kijakazi*, No. 19-cv-3532, 2022 WL 1746849, at *5 (N.D.Ill. May 31, 2022) ("The ALJ erred by failing to explain why she did not incorporate [the state agency consultant's one- to two-step task] limitation . . . because that limitation was more restrictive than the limitation to simple, routine work."); *Michael S. v. Saul*, No. 19-cv-4033, 2020 WL 4052903, at *4 (N.D.Ill. July 20, 2020) (remanding where the ALJ rejected the state agency consultants' opinion that the claimant was limited to one- to two- step tasks without providing "a thorough and appropriate explanation for doing so"); *Martinez v. Berryhill*, No. 16 C 9240, 2018 WL 2984829, at *3 (N.D.Ill. June 14, 2018) (remanding where the "ALJ restricted Plaintiff to 'simple, routine tasks' without explaining his reason for omitting the one- to two-step limitation [recommended by consultants]").

**B.      The ALJ failed to show that the mental restrictions in the RFC would specifically exclude tasks that someone with Claimant's limitations could not perform.**

Even if the state agency consultants had not recommended a one- to two-step limitation, the ALJ's mental RFC assessment would be insufficient in this case as the Seventh Circuit has repeatedly rejected the notion that a hypothetical confining a claimant to "simple, routine tasks" adequately captures limitations in CPP. *See DeCamp*, 916 F.3d at 676; *Crump v. Saul*, 932 F.3d

567, 570-71 (7th Cir. 2019) (citing cases); *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014). While it is true that this restriction might suffice when it is "manifest that the ALJ's . . . phrasing specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform," *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (internal citations omitted), that is not the case here.

First, the ALJ's decision to accommodate Claimant's moderate CPP limitations with a restriction to "simple, routine tasks" was not supported by the opinion of any mental health professional. This distinguishes his assessment from those where courts found such a restriction to be supported by substantial evidence. *See Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) ("The ALJ's reliance on [state agency consultants'] medical opinions was permissible."); *Delong v. Saul*, 844 Fed.Appx. 894, 900 (7th Cir. 2021) ("[T]he ALJ did not err in relying on the opinions of agency physicians which did not recommend any additional limitations beyond those the ALJ included in his RFC determination."); *Recha v. Saul*, 843 Fed.Appx. 1, 3-4 (7th Cir. 2021); *Meghan S. v. Kijakazi*, No. 20 C 1592, 2021 WL 4146913, at *8 (N.D.Ill. Sept. 13, 2021) ("The ALJ reasonably relied on [the state agency consultants] to translate Meghan's mental impairments into an RFC."). As explained above, the ALJ in this case rejected the findings of the state agency consultants regarding what mental restrictions were necessary and failed to support his alternative mental RFC with any citations to the record.

This case is also distinguishable from those in which the claimant's limitations were related to specific triggers that the restrictions assigned by the ALJ were designed to eliminate. *See, e.g., Bruno v. Saul*, 817 Fed.Appx. 238, 241-42 (7th Cir. 2020) (limitation to simple tasks sufficient where claimant demonstrated "decreased concentration when handling more complex tasks"); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (CPP impairments triggered by

11

people or crowds accommodated by restriction limiting interactions with others); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir.2002) (stress-related limitations accommodated by restriction to low-stress work). If the ALJ felt that Claimant's particular limitations would be accommodated by a restriction to simple work, he was required to identify evidence supporting such a finding.

Without the above-identified exceptions, the Court finds that in this case – as in most – the RFC restriction to "simple, routine tasks" did not exclude "those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Remand is required for this reason as well.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse or remand the final decision of the Commissioner, (Dckt. #18), is granted and the Commissioner's motion to uphold the decision, (Dckt. #23), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:** January 4, 2023

**Jeffrey I. Cummings**
**United States Magistrate Judge**